UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
MAY 1 3 2013

PER _____ /DEPUTY CLERK

DAYTON LEBAR,                          :
                                       :
        Petitioner                     :
                                       :
    v.                                 : CIVIL NO. 3:CV-08-0072
                                       :
BRIAN THOMPSON,                        : (Judge Kosik)
                                       :
        Respondent                     :

## MEMORANDUM

Dayton Lebar, a Pennsylvania state inmate, initiated this action with the filing

of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition,

Lebar challenges his criminal conviction by the Monroe County Court of Common

Pleas on March 6, 2001, following a guilty plea on charges of Sexual Assault,

Endangering the Welfare of Children and Statutory Sexual Assault. For the reasons

that follow, the petition will be denied.

## I.    Background

On March 6, 2001, LeBar pled guilty to three counts charging sexual assault,

endangering the welfare of children, and statutory sexual assault, all of which

involved sexual relations with his minor daughter, N.L., and another minor female,

C.V. On June 13, 2001, LeBar was sentenced to an aggregate term of ten to twenty

years of incarceration at a state correctional institution. He appealed the sentence on July 13, 2001, claiming that the court deprived him of an individualized sentence and imposed an excessive sentence upon him, however, the Superior Court affirmed Defendant's sentence on March 20, 2002. On December 30, 2002, the Supreme Court of Pennsylvania denied a Petition for Allowance of Appeal.

On August 20, 2003, LeBar filed a pro se Petition for Post-Conviction Relief under the Post Conviction Relief Act (hereinafter referred to as "PCRA"), 42 Pa.C.S.A. § 9531, et seq., raising several claims of ineffective assistance of counsel. After a series of court-appointed counsel withdrew due to conflicts, LeBar's newly appointed counsel (Paul Kramer, Esq.) amended the original PCRA petition on January 21, 2005, to allege that Attorney Brian Germano of the Monroe County Public Defender's Office was ineffective on the grounds that he: (1) exhibited animosity towards LeBar; (2) insufficiently prepared for Defendant's preliminary hearing; (3) failed to investigate and introduce certain statements at sentencing; (4) failed to adequately address his own ineffectiveness and the sentencing court's abuse of discretion to the Pennsylvania Superior Court; and (5) unlawfully induced LeBar to plead guilty. (Amendments to PCRA, 01/21/05, ¶2.) Following an evidentiary hearing where LeBar testified that he agreed to proceed in accordance with the amendments prepared by court-appointed counsel instead of his original PCRA, the PCRA petition was denied. (Doc. 46-7, 6/1/05 Monroe County Ct. Common Pleas

2

Op.)

On June 28, 2005, LeBar, through counsel, filed an appeal to the Superior Court of Pennsylvania. However, LeBar then filed a _pro se_ Motion for Withdrawal of Counsel. A hearing was held on July 5, 2005, following which LeBar was granted leave to proceed _pro se_ on his appeal and court-appointed counsel, Paul Kramer, Esq., was relieved of any further representation of LeBar. On December 1, 2006, the Superior Court of Pennsylvania affirmed the Order of the PCRA court denying LeBar's first PCRA petition. (Doc. 46-5, Pa. Super Op.) The Supreme Court of Pennsylvania denied his allowance of appeal by order dated July 2, 2007.

On July 18, 2007, LeBar filed a second PCRA petition asserting claims of ineffective assistance of trial counsel and PCRA counsel, the voluntariness of his plea and various decisions of the PCRA court. The PCRA court found the petition to be patently frivolous, and that a previous petition involving the same issue or issues was filed and finally determined adversely to LeBar. A Notice of Disposition Without Hearing was filed on August 17, 2007. Thereafter, on August 31, 2007 and September 7, 2007, Defendant filed the following three motions: Motion for Court to Specify the Defects in Defendant's Second PCRA Petition; Motion for Extension of Time to Respond to the August 17, 2007 Notice of Disposition Without Hearing; and Motion for Production of Official Court Record.

On October 2, 2007, the PCRA court denied LeBar's motions and advised him

that he had thirty (30) days to appeal the dismissal of his second PCRA to the Pennsylvania Superior Court. (Doc. 46-6.) Thereafter, LeBar filed four pro se appeals from four orders entered between October 2 and November 1, 2007 in the Court of Common Pleas of Monroe County. LeBar alleged that the court erred by denying : (1) his pro se second PCRA; (2) his motion to compel the trial court clerk of records to provide documents; 3) his motion to reconsider or modify his sentence imposed on June 13, 2001, and (4) his motion to withdraw his guilty pleas. The Superior Court consolidated these appeals for purposes of preparing an opinion. On March 10, 2009, the Superior Court found no basis to exist for disturbing the PCRA court's dismissal of LeBar's second PCRA petition or its denial of LeBar's motions. (Doc. 46-8.)

On appeal to the Superior Court from the second PCRA, LeBar raised thirteen (13) grounds. The Superior Court found that with the possible exception of layered claims of ineffectiveness, LeBar's second PCRA petition rehashed the claims raised and rejected on direct appeal and in his first PCRA petition.[1] The Superior Court held that the act of filing a second PCRA petition within 60 days of resolution of the appeal did not "breathe new life" into claims rejected on direct appeal or in the first

---

[1] The court found that there was no basis for providing relief on Issues 1 through 10 or Issue 13 in that said issues were either previously litigated or, to the extent they were not previously litigated, they were waived. His claims of ineffectiveness on the part of PCRA counsel and claims of layered ineffectiveness of counsel were found to be without merit.

PCRA proceedings, nor did it resurrect claims that could have been presented previously. (Id. at 8.) Any claims asserted in the second PCRA that were known to LeBar before January 21, 2005, but were not raised in the amended petition filed on that date, were deemed to be waived.[2] Further, with the possible exception of layered claims of ineffectiveness of counsel, to the extent the claims were not already litigated, they were either found to be untimely or to have been waived and could not be raised successfully in a second PCRA petition.

On January 11, 2008, LeBar filed the instant petition for writ of habeas corpus challenging his conviction and sentence. On January 15, 2008, the petition was stayed to allow LeBar the opportunity to conclude his state court exhaustion efforts, and the case was administratively closed. (Doc. 4.) He thereafter provided the court with monthly reports advising of the status of a second PCRA petition pending before the state courts. On June 10, 2009, the stay was lifted, the case reopened, and an Order with Notice of Limitations of Filing of Future Petitions Under 28 U.S.C. § 2254 issued. (Doc. 21.) Following LeBar's notification that he intended to proceed on his petition as originally filed, he submitted a supporting memorandum. Although

---

[2] The court found that absent an exception to the PCRA's timeliness requirements, the deadline for filing a timely second or subsequent petition was March 20, 2004. As of that date, LeBar's first PCRA petition was not before the Superior or Supreme Court on appeal as it was still pending before the PCRA court. PCRA counsel did not file an amended petition until January 21, 2005. As such, if any of the claims asserted in the second PCRA petition were known to LeBar before January 21, 2005, but were not raised in the amended petition filed on that date, those claims must be deemed waived. (Id. at 9.)

a response was subsequently filed by Respondent to the petition (Doc. 43), there was delay involved with respect to obtaining from Respondent exhibits referenced in the response but not attached thereto, and the failure of Respondent to submit a memorandum in support of the response as previously directed by the court.[3] After these matters were addressed, LeBar filed his traverse. (Doc. 55.) The petition is now before the court for consideration. In the petition, LeBar raises the following grounds:

1. Guilty Plea was not knowingly, intelligently and voluntarily entered

2. Pennsylvania statute 18 Pa.C.S. § 3124.1 Sexual Assault is unconstitutionally vague as it does not define "without consent"

3. Unconstitutional confession

4. Unconstitutional search and seizure

5. Prosecutorial misconduct in providing knowingly false facts at the guilty plea colloquy

---

[3] The court feels compelled to remark that even after directing Respondent to comply with the court's earlier order to submit a memorandum in support of the response to the habeas corpus petition, the memorandum submitted on September 17, 2010 was, at best, woefully lacking in substance and completely inadequate in all respects. Other than providing the court with the boilerplate standard of law utilized by a federal district court in addressing a § 2254 petition, the memorandum provided no useful information to the court and failed to address any of the procedural and substantive issues before the court. In fact, the court questions whether Respondent intended to submit this memorandum in the above-captioned action or whether it was a "canned" response routinely submitted in response to habeas petitions that failed to have been edited to apply to the procedural history and claims raised in the instant action.

6.   Unconstitutional and illegal sentence

7.   Ineffective Assistance of Trial/Guilty plea, Sentencing and Direct Appeal counsel (Brian Germano)

8.   Ineffectiveness of direct appeal counsel (Michael Muth)

(Doc. 1, Pet. at 6-12.)

## II.   Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.   Legal Standards

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petition has met the requirements of exhaustion. Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. §

2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

To satisfy the exhaustion requirement, a federal habeas petitioner must have presented the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process."[4] O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see also Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). The exhaustion requirement is satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition. Swanger v. Zimmerman, 750 F.2d 291, 195 (3d Cir. 1984). It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts both on direct appeal and in a PCRA proceeding. Id. However, a petitioner is not deemed to have exhausted the remedies available to him if he has a right under the state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S.

---

[4] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under Section 2254. *See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)(per curiam). As such, petitioners are not required to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

346, 350 (1989). The petitioner bears the burden of demonstrating that he has

satisfied the exhaustion requirement. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir.

2000)(citing Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)).

Beyond questions of exhaustion, a federal court may be precluded from

reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518

U.S. 152, (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor v.

Walters, 96 F.3d 675 (3d Cir. 1996). The purpose of the procedural default rule is to

prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their

claims in state court. Coleman, 501 U.S. at 732.

A state's procedural rules are entitled to deference by federal courts; a

petitioner's violation of a state procedural rule may constitute an independent and

adequate state law ground for denial of federal review of habeas claims under the

procedural default doctrine. Id. at 750. Moreover, violations of a state's procedural

rules may constitute an independent and adequate state ground sufficient to invoke the

procedural default doctrine even where no state court explicitly has concluded that a

petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13,

15 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996). However, the procedural

default doctrine only applies when a state procedural rule is consistently or regularly

applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997)(quoting Johnson v.

Mississippi, 486 U.S. 578, 588-89 (1988))[5]. A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines, 208 F.3d at 166.

The United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). See Wenger, 266 F.3d at 227. Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims, but must not decide the merits of the claims that are barred under the procedural default doctrine.[6] Id.

Once a court is satisfied that the exhaustion requirement has been met and a merits review of a claim is warranted, 28 U.S.C. § 2254(d) provides, in pertinent part,

---

[5] See also Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

[6] As previously indicated, the response in this matter is wholly inadequate. In the Memorandum in support of the answer to the habeas petition, Respondent generally states that LeBar has fully litigated his claims through the state court system.

that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

The United States Court of Appeals for the Third Circuit has set forth the following analysis applicable to the legal inquiries:

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). The first is whether the state court decision was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).

> The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.2d.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)(citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petition has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")(quoting § 2254(e)(1))(citing Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, ___ U.S. ___, ___, 131 S.Ct. 1388, 1401-03, ___L.Ed.2d___ (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011). Like the "unreasonable

application" prong of paragraph (1), a factual determination should be adjudged

"unreasonable" under paragraph (2), only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. 362 at 408-09.

Relief can only be granted if the petitioner shows that the state court's decision satisfies one of the three tests as set forth above in Rountree. With the above legal framework in mind, the court will now address the claims in the instant habeas petition.

**B.    Analysis of grounds raised in habeas petition**

1.    Guilty plea not knowing, intelligent and voluntary

LeBar claims that his guilty plea was procedurally flawed in numerous respects. He challenges the inquiry conducted by the trial court as inadequate and claims that he was not aware of the constitutional rights he was forfeiting. First, he claims that the trial court did not inquire if he understood the rights he was forfeiting and never allowed him to answer questions. He also maintains that the prosecutor provided false

information with respect to the age of victim N.L.[7] Further, LeBar claims that trial counsel told him that he would spend the rest of his life in prison if he did not accept the plea and that he promised him a sentence of 6½ years in exchange for a guilty plea. He states that he was also informed by counsel that he had no defense because of his confession. He challenges the factual basis for the plea as insufficient in that he was not informed of the elements of the charges at the plea colloquy or any other time.

This issue was raised by LeBar in his first PCRA petition, as amended by counsel, filed on January 21, 2005. The trial court found LeBar's argument that he was unlawfully induced to plead guilty to lack merit. (Doc. No. 46-7, Tr. Ct. Op. denying PCRA dated 6/1/05.) Relying on the testimony given at the evidentiary hearing, LeBar's statements were found to be bald assertions lacking any substantive support. (Id. at 14-16.)

LeBar filed a pro se appeal from the trial court's dismissal of his PCRA petition. In so doing, he raised six (6) issues which can be grouped into challenges to the effectiveness of both trial and PCRA counsel, various decisions of the PCRA court, and the voluntariness of his plea. However, of these, only four claims appear in his Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.

---

[7] According to LeBar, trial counsel told him that the age of N.L. negated consent in Count I, Sexual Assault. He claims his plea was based upon fraudulent information when the prosecutor stated that N.L was under the age of 16 on or about October 1, 2000, since her date of birth is August 7, 1984. He states that he has always maintained that the sexual contact was consensual and that a 16 year old is legally capable of consent in Pennsylvania.

1925(b): three categories of errors by the PCRA court, and the ineffectiveness of PCRA counsel.[8]

In his appeal to the Pennsylvania Superior Court, LeBar argues that his guilty plea was not knowingly and intelligently entered because the trial court's colloquy was procedurally flawed, and because he had been coerced by trial counsel. The Superior Court refused to address this issue on the merits because it found the issue to have been waived due to LeBar's failure to include it in his Rule 1925(b) Concise Statement of Matters Complained of on Appeal.

The rule that an issue is waived if it is not raised in the Rule 1925(b) statement was definitively established in Commonwealth v. Lord, 553 Pa. 415, 719 A.2d 306, 308 (Pa. 1998). This rule has been consistently applied since that time. Because the rule of waiver for failing to raise an issue in a Concise Statement is both independent and adequate, LeBar has procedurally defaulted this claim. Buck v. Colleran, 115 F. App'x 526 (3d Cir. 2004)(holding failure to comply with Rule 1925(b) constitutes procedural default). To overcome this procedural default, LeBar would have to carry his burden to establish cause and prejudice for the default or a miscarriage of justice. He has not shown either. While LeBar asserts that PCRA counsel failed to file a 1915(b) statement, thereby waiving and abandoning this claim on appeal, the

---

[8] The court takes judicial notice of the Concise Statement of Matters Complained of on Appeal as docketed in the matter of Commonwealth of Pennsylvania v. LeBar, No. 1636 Criminal 2000 (Monroe County Court of Common Pleas).

Pennsylvania Superior Court found no basis of support for this contention. In denying LeBar's first PCRA petition, the Superior Court acknowledged LeBar's attempt to remove counsel shortly after the PCRA court denied his petition. Both LeBar and counsel filed notices of appeal. The motion for removal was subsequently denied. Counsel had mistakenly filed an Anders petition rather than a Turner/Finley letter as is required when attempting to withdraw in the course of PCRA appellate proceedings. The Superior Court remanded for a hearing following which the PCRA court determined LeBar could proceed pro se because his request to do so was knowing, intelligent and voluntary. The Superior Court then addressed the four claims set forth by LeBar in his 1925(b) statement, dismissing them as baseless.

LeBar is complaining of PCRA counsel's failure to file a 1925(b) statement after he himself attempted to remove counsel from representation and succeeded in his efforts to represent himself on appeal. As such, if there was any deficiency in the 1925(b) statement, it falls squarely on LeBar. (Doc. 46-8 at 12-13.) The court concludes the Pennsylvania Superior Court made a reasonable application of a well-established state rule of procedure and that rule provided an independent and adequate ground for its decision. This claim was waived under state law and, as a result, is procedurally defaulted in this forum. The record clearly fails to demonstrate cause for LeBar's procedural default on the alleged basis that PCRA counsel abandoned LeBar or waived his issues on appeal by failing to include them in the 1925(b) statement.

2. <u>Challenge to 18 Pa. C.S. § 3124.1 as unconstitutionally vague</u>

LeBar maintains that 18 Pa. C.S. § 3124.1, the sexual assault statute, is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. This statute provides as follows:

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant without the complainant's consent.

18 Pa. C.S. § 3124.1. LeBar specifically challenges the statute as vague because it does not define the terms "without consent" and, as such, any determination by the Commonwealth, trial counsel, the trial court and the Pennsylvania Superior Court that the age of the victim negates consent was improper since the statute does not specifically prohibit a minor from consenting, and as such the victim's allegedly voluntary participation in sexual acts with him should have been explored and not precluded.

The clearly established law with respect to this issue is as follows. "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Posters 'N' Things, Ltd. v. United States</u>, 511 U.S. 513, 519 (1994)(internal quotation omitted); <u>see</u> <u>also</u>, <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-09 (1972). A

statute is unconstitutionally vague only if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Batchelder, 442 U.S. 114, 123 (1979)(internal quotation omitted); see also, United States v. Williams, 553 U.S. 285, 304 (2008). "[P]erfect clarity and precise guidance" is not required. Williams, 553 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)). To succeed on a vagueness challenge the party asserting the challenge must show that the statute is vague "not in the sense that it requires a person to confirm his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971).

The standards governing a void-for-vagueness challenge to the statute have recently been explained by the Supreme Court as follows:

> "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). We consider whether a statute is vague as applied to the particular facts at issue, for "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Holder v. Humanitarian Law Project, ___ U.S. ___, ___-___, 130 S.Ct. 2705, 2718-19, 177 L.Ed.2d 355 (2010)(parallel citations omitted); accord Skilling v. United States, ___ U.S. ___, ___-___, 130 S.Ct. 2896, 2927-28, 177 L.Ed.2d 619 (2010)(quoting

Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903

(1983))(alterations by quoting court)("To satisfy due process, 'a penal statute [must]

define the criminal offense [1] with sufficient definiteness that ordinary people can

understand what conduct is prohibited and [2] in a manner that does not encourage

arbitrary and discriminatory enforcement.' The void-for-vagueness doctrine embraces

these requirements."). "[C]larity at the requisite level may be supplied by judicial

gloss on an otherwise uncertain statute, [however] due process bars courts from

applying a novel construction of a criminal statute to conduct that neither the statute

nor any prior judicial decision has fairly disclosed to be within its scope." United

States v. Lanier, 520 U.S. 259, 266-67, 117 S.Ct. 1219, 137 L.Ed.2d 432

(1997)(citations omitted). Importantly, "[w]hen a state statute has been construed to

forbid identifiable conduct so that interpretation (by the state court) puts these words

into the statute as definitely as if it had been so amended by the legislature, claims of

impermissible vagueness must be judged in that light." Wainwright v. Stone, 414 U.S.

21, 23 (1973)(pur curiam)(internal quotation omitted). Under the void-for-vagueness

doctrine, "the touchstone is whether the statute, either standing alone or as construed,

made it reasonably clear at the relevant time that the defendant's conduct was

criminal." Lanier, 520 U.S. at 267.

    In ruling on LeBar's appeal from the denial of his first PCRA petition, the

Pennsylvania Superior Court found as follows with respect to this issue:

19

"The admission or exclusion of evidence is a matter vested in the trial court's sound discretion, and we may reverse the court's ruling only upon a showing of a clear abuse of that discretion." Commonwealth v. Wattley, 880 A.2d 682, 685 (Pa. Super. 2005), appeal granted, 901 A.2d 498 (Pa. 2006). "Our scope of review is limited to an examination of the trial court's stated reason for its decision." Id. Appellant contends that the principle relied on by the court, that the age of the victim negates consent, misconstrues the statute. Rather he insists that the reverse is true, and that the absence of statutory language prohibiting consent from a minor invalidates the assumption that minors under the age of thirteen are incapable of consenting. We are not persuaded.

In Commonwealth v. Dennis, 784 A.2d 179 (Pa. Super. 2001), appeal denied, 798 A.2d 1287 (Pa. 2001), our Court found that because the victim was under the age of thirteen, she was incapable of consenting; thus the appellant was criminally liable for rape "[r]egardless of the victims's consent." Id. at 182 (emphasis added). The statute here need not specifically prohibit a minor from consenting to the act involved because minors are a priori incapable of consent. Thus the court did not err in its interpretation of the statute.

Moreover, evidence of the offenses committed by Appellant was in no way consistent with consensual acts. At the PCRA hearing Appellant's trial counsel provided detailed testimony regarding his investigation of whether consent had been given; he reported that his examination of police and medical reports revealed that Appellant's daughter had sustained a vaginal tear from the last instance of forcible rape perpetrated by Appellant. For this reason, too, we find no error in the court's ruling.

(Doc. 46-5, Super. Ct. Op. at 5-6.) The state appellate court's finding is not contrary to, nor does it involve an unreasonable application of, the federal standard set forth above with respect to analyzing a void-for-vagueness claim. The statute provides that

a second degree felony is committed when a person engages in sexual intercourse with a complainant without the complainant's consent. It would be unnecessary to add specific language into the statute prohibiting a minor from consenting to the act involved, since a minor would be incapable of consenting. As such, the Pennsylvania Superior Court's finding will not be disturbed. Further, the evidence contained in the record and cited to by the Superior Court demonstrates that this was not consistent with acts that were consensual. For these reasons, the second ground raised by LeBar in his petition is found to be without merit.

### 3. Unconstitutional confession

LeBar states that on October 25, 2000 he was interviewed by Detective Wolbert of the Stroud Area Regional Police Department. After the interview began, Wolbert told him that he was not leaving the police station a free man and that he was no longer allowed to get out of his chair or leave the room. LeBar states that from the tone of Wolbert's voice and his demeanor it was obvious to him that he was under arrest. He claims that Wolbert did not inform him of his Miranda rights until after he had made incriminating statements.

LeBar raised this issue in his appeal to the Pennsylvania Superior Court from the order dismissing his second PCRA petition. However, the Superior Court did not address LeBar's challenge to his confession because they found it to be waived because it involved events occurring before LeBar's sentencing and could have been

previously presented because it was known to him before January 21, 2005. As such, LeBar could have raised this issue when he amended his first PCRA petition but failed to do so. The filing of a second PCRA petition does not resurrect claims that could have been pursued in the early petition. Any attempt by LeBar to place blame on counsel who filed his amended PCRA petition is rejected for the reasons previously stated in this Memorandum based upon LeBar's testimony at the evidentiary hearing that he agreed to proceed in accordance with said amendments to his original PCRA. (Doc. 46-6 at 3, n. 3.) For these reasons, this court finds no basis to exist that would warrant habeas corpus relief.

4.    Unconstitutional Search and Seizure

LeBar challenges the affidavit used to obtain the search warrant in his case on the basis that it contained falsified statements. In particular, he claims that the alleged statements of Jillian Engler were false and that about 2-3 weeks after the search, Engler informed him that she did not make any such statements. This ground was first raised in LeBar's appeal to the Pennsylvania Superior Court with respect to the denial of his second PCRA petition. Without unnecessary elaboration and for the same reasons provided in addressing the foregoing ground for habeas relief, the court also finds this ground to be waived.

5.    Prosecutorial Misconduct

In his pending habeas petition, LeBar maintains that there were multiple

22

instances of prosecutorial misconduct. In particular, he argues that the prosecutor: (1) provided a knowingly false factual basis at the guilty plea colloquy with respect to the age of victim #1; (2) failed to inform the court that LeBar was promised a sentence of 6½ years in exchange for a plea; (3) provided fraudulent information at the sentencing that he had impregnated victim C.B.; (4) expressed his personal opinion at the sentencing as to what sentence should be imposed; and (5) withheld Brady material in the form of the forensic results of the rape kit on victim N.L.

The first time these claims were raised by LeBar were in the appeal he filed with the Pennsylvania Superior Court from the denial of relief by the trial court with respect to his second PCRA petition. For the reasons set forth with respect to the previous two habeas grounds, this claim has also been waived.

6. <u>Unconstitutional and Illegal Sentence</u>

LeBar raises numerous challenges to the constitutionality and legality of his sentence of an aggregate term of ten (10) to twenty (20) years of incarceration. He first argues that the Commonwealth provided fraudulent information to the sentencing court and that the court relied on the information to sentence him nine (9) years above the standard minimum range of the Sentencing Guidelines.[9] He also contends that the court sentenced him for incest when this charge was nolle prossed as part of his plea agreement. He also claims that he was sentenced twice for the same conduct, conduct

---

[9] This information was that LeBar impregnated victim C.B. and that she gave birth to his child when DNA evidence has excluded him.

that was already included in the charge of endangering the welfare of children and then used in the sexual assault charge, as well as sentenced twice with respect to the position of trust violation. In addition, LeBar argues that the sentencing court failed to consider any mitigating factors such as his community involvement, and incorrectly stated the age of the victim as 14, and then relied on this error when sentencing him. Other challenges to the sentence advanced in the instant habeas petition are that the court failed to take into consideration C.B.'s statement to the authorities and her mother that she wanted to have sex with him, and that no explanation was given by the court as to why the sentence was above the standard guidelines whereas sentences in other cases involving the same charges were not above the standard guidelines.

On direct review to the Pennsylvania Superior Court, LeBar exclusively raised the issue of whether the sentencing court deprived him of an individualized sentence and imposed an excessive sentence when it ignored various mitigating circumstances and misconstrued purported aggravating circumstances. (Doc. 46 at 117, Pa. Super. Op. dated 3/20/02.) In analyzing LeBar's challenge to the discretionary aspects of his sentence, the Superior Court held that two requirements must be met before such a claim could be heard on the merits. First, LeBar must set forth in his direct appeal brief a concise statement of the reasons relied upon for seeking allowance of appeal. Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. See Commonwealth v. Koren, 646 A.2d

1205, 1207 (Pa. Super. 1994). To establish a substantial question, LeBar must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

In analyzing this issue, the Superior Court found that each of the sentences imposed by the trial court were within the statutory limits and, as such, LeBar failed to raise a substantial question. To the extent he argued that mitigating factors had not been taken into consideration (lack of prior convictions for similar offenses, show of remorse, and potential for rehabilitation), the Superior Court found these contentions to challenge the weight accorded legitimate sentencing facts and, as such, not to raise a substantial question with respect to appellate review of the discretionary aspect of his sentence. With respect to LeBar's challenge to the sentencing court's use of the pregnancy of C.B. as an aggravating factor, or as a reason to depart from the sentencing guidelines, the Superior Court found that even if they were to accept this as raising a substantial question, it would be without merit. Although while giving the reasons for the sentence, the judge did make a passing remark with respect to how not only did LeBar engage in sexual conduct with a young girl, but that he actually impregnated her, the Superior Court found that the reasons given for the sentence demonstrated that the sentencing court weighed the Sentencing Guidelines with the facts of the crime and LeBar's character. (Id. at 119.)

In his second PCRA, LeBar raises the issue that a paternity suit has since shown

that he is not the biological father, and also that the trial court imposed an illegal sentence. The Pennsylvania Superior Court found the challenge to the illegal sentence to have been previously litigated on direct appeal. With respect to the paternity test results, the Superior Court noted as follows:

> . . . In his Second PCRA Petition, Defendant asserts that this determination [non-paternity test results] is grounds for PCRA relief. Defendant fails to demonstrate how this determination affects the charges to which he pled, or alters the sentence imposed. Defendant appears to suggest that this determination is proof of C.B.'s promiscuity, thereby excusing his behavior and/or the fact that he had sexual relations with this minor female. The September 10, 2001 determination that Defendant is not the biological father of this child does not alter the fact that Defendant had sexual relations with this minor female; or raise a substantial question that the sentence was inappropriate.

(Doc. No. 46-6 at 2, n. 2.)

To the extent LeBar challenges the severity of his sentence, such a claim is not grounds for federal habeas relief unless the sentence exceeds limits set by state law. Townsend v. Burke, 334 U.S. 736, 741 (1948). Generally, a state court's sentencing decision and claims arising out of that decision are not cognizable in a federal habeas proceeding, unless the sentencing constitutes cruel and unusual punishment under the Eighth Amendment, exceeds the statutory limits, or is arbitrary or otherwise in violation of due process. See Champman v. United States, 500 U.S. 453, 465 (1991); Estelle v. McGuire, 502 U.S. 62 (1991). A federal court may review a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims asserting violations of state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review. Jones v Supt. Rahway Sate Prison, 725 F.2d 40, 43 (3d Cir. 1984). Inasmuch as LeBar's sentences fall within the state's statutory sentencing maximum, the Superior Court's finding that his sentence is not excessive can not be disturbed. LeBar's objections to the legality of his sentence fail to raise a cognizable claim under which this court may grant federal habeas relief.

The court next examines LeBar's challenges to the discretionary aspects of his sentence. As previously stated, with respect to sentence length, the state court's sentencing discretion is unreviewable by a federal court provided that the sentence lies within the statutory guidelines, it is not based upon arbitrary considerations, and the defendant's constitutional rights were not violated. See Estelle, 502 U.S. at 67-68 (explaining that federal habeas courts are not permitted to review questions of state law); Wainwright v. Skyes, 433 U.S. 72, 81 (1977). Otherwise, a habeas petition cannot be used to challenge sentence length since allegations that a state tribunal abused its discretion under state law do not constitute an issue of federal constitutional dimension. See Townsend, 334 U.S. at 741 (stating that when a state "sentence [is] within the limits set by the statute, its severity would not be grounds for [habeas] relief").

As such, the principle of comity suggests that this court defer to the Superior

Court's review and affirmation of the sentence with respect to LeBar's challenge to the discretionary aspects of his sentence. The Superior Court found no abuse of discretion after carefully reviewing the sentencing transcript. As such, this habeas ground is found to be without merit.

7. Ineffective Assistance of Trial/GuiltyPlea/Sentencing/Direct Appeal Counsel Brian Germano

LeBar raises numerous grounds of ineffective assistance of counsel in his petition. In fact, he sets forth over forty (40) grounds with respect to the alleged ineffectiveness of trial/guilty plea/sentencing/direct appeal counsel Brian Germano. Many of these grounds can be grouped into the following categories: ineffectiveness with respect to investigation of the facts and preparation for the preliminary hearing; ineffectiveness with respect to the confession and the guilty plea/colloquy; ineffectiveness with respect to sentencing; and ineffectiveness on direct appeal.

An ineffective assistance of counsel claim is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes. Williams v. Taylor, 529 U.S. 362, 391 (2000); Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006); Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010). A habeas petitioner asserting a claim under Strickland must establish two elements. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." Strickland, 466 U.S. at 687. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness." Id. at 688. The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Reasonableness of counsel's challenged conduct on the facts of the particular case are viewed as of the time of counsel's conduct. Id. at 689-90.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695; see also Harrington v. Richter, ___, U.S. __, ___-___, 131 S.Ct. 770, 791-92, 178 L.Ed.2d 624 (2011)(the question is "whether it is 'reasonably likely' the result would have been different"). Because failure to establish either prong results in denial of a defendant's claim, a court may begin its analysis with either prong of the test. United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

This Court must determine whether the Pennsylvania state court applied a rule that contradicts the United States Supreme Court's standard set forth in Strickland for

evaluating an ineffective assistance of counsel claim or was confronted with a set of facts materially indistinguishable from a decision of the United States Supreme Court but reached a different result.

In his first PCRA petition, as amended, many of the claims raised in the instant federal habeas petition were presented to and addressed by the PCRA court, and found to be without merit. These claims included the following[10]:

- Only met with Petitioner less than 15 minutes for preliminary hearing
- Failed to investigate competency of N.L.
- Failed to interview N.L. or C.B.
- Failed to interview informant Engler
- Failed to investigate circumstances of unconstitutional confession
- Informed Petitioner that because of confession he would spend rest of life in prison  and that he had no defense
- Informed Petitioner the age of N.L negated consent for sexual assault charge
- Promised Petitioner a sentence of 6½ years for a guilty plea
- Instructed Petitioner how to answer question at guilty plea colloquy and not to say anything to court about the promise of a  6 ½ year sentence
- Failed to inform court of the 6½ year sentence promise
- Failure to adequately address the abuse of discretion by the sentencing court

(Doc. 46-7, 6/1/05 Monroe County Ct. Common Pleas Op.)

An appeal was thereafter filed with the Pennsylvania Superior Court from the denial of the PCRA petition. On appeal, the Superior Court found as follows:

Appellant ostensibly raises six issues for our review which

---

[10] Again, to the extent LeBar attempts to argue that any of the other grounds presented in his pending habeas petition should have been included in his first PCRA, as amended, his claim is without merit. At the evidentiary hearing on his PCRA petition, LeBar testified that he agreed to proceed in accordance with the amendments to his first PCRA prepared by court-appointed counsel instead of his original PCRA. (See Doc. 46-7, n. 2.)

can be grouped into challenges to the effectiveness of both
trial and PCRA counsel, various decisions of the PCRA
court, and the voluntariness of his plea. However, of these
only four claims appear in his Concise Statement of Matters
Complained of on Appeal pursuant to Pa.R.A.P. 1925(b):
three categories of errors by the PCRA court, and the
ineffectiveness of PCRA counsel.

(Doc. No. 46-5, 12/1/06 Super. Ct. Op. at 3.) As such, the Superior Court only

addressed the issues raised by LeBar in terms of his 1925(b) statement and all other

issues were deemed to be waived as instructed by the Pennsylvania Supreme Court in

Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998). As such, the Superior Court did

not address any of LeBar's ineffective assistance of counsel claims with respect to

Attorney Germano on this basis.

LeBar filed a second PCRA petition with the Monroe County Court of Common

Pleas wherein he included claims of ineffective assistance of trial counsel. However,

the PCRA court found that such issues had been previously litigated and, as such, not

subject to further review. On appeal to the Pennsylvania Superior Court, LeBar raised

thirteen (13) issues. One of the issues was the ineffectiveness of trial and direct appeal

counsel. The Superior Court found that:

> . . . with the possible exception of layered claims of
> ineffectiveness, Appellant's second PCRA largely rehashes
> the claims raised and rejected on direct appeal and in his first
> PCRA petition. The act of filing a second PCRA petition
> within 60 days of resolution of the appeal does not breathe
> new life into claims rejected on direct appeal or in the first
> PCRA proceedings, nor does it resurrect claims that could
> have been presented previously.

As noted above, absent an exception to the PCRA's timeliness requirements, the deadline for filing a timely second or subsequent petition was March 20, 2004. As of that date, Appellant's first PCRA petition was not before this Court or the Supreme Court on appeal, it was still pending before the PCRA court. PCRA counsel did not file an amended petition until January 21, 2005. Therefore, if any of the claims asserted in Appellant's second PCRA petition were know to Appellant before January 21, 2005 but were not raised in the amended petition filed on that date, those claims must be deemed waived.[11] Again, with the possible exception of layered claims of ineffectiveness of counsel, to the extent the claims were not already litigated, they are either untimely or have been waived and cannot be raised successfully in a second PCRA petition.

(Doc. 46-8 at 8-9.)

In addressing LeBar's ineffective assistance of trial court claims, the Superior Court found that they either were previously litigated and, as such could not be considered pursuant to 42 Pa.C.S.A. § 9544(a), or to the extent they were not previously litigated, they were waived because they were known to LeBar before January 21, 2005, but were not raised in the amended PCRA petition filed on that date.[12] For these reasons, the claims raised by LeBar will not be addressed by the court.

---

[11] See 42 Pa.C.S.A. § 9544(b) ("Issues waived.- - For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so ... in a prior state postconviction proceeding.").

[12] See 42 Pa.C.S.A. 9544(b). Again, any argument on LeBar's part that PCRA counsel failed to include ineffective assistance of trial counsel claims in the amended PCRA petition are without merit based upon LeBar's testimony during the PCRA evidentiary hearing that he agreed to proceed in accordance with the amended petition prepared by court-appointed counsel and not the original PCRA petition.

8.  Ineffective Assistance of Direct Appeal (Supreme Court) Counsel Michael Muth

Without unnecessary elaboration and for the same reasons previously given with respect to Ground 7, the instant ground will not be addressed by the court. In his second PCRA petition, LeBar alleged that direct appeal counsel who filed the petition of allowance of appeal was ineffective. The Pennsylvania Superior Court held that there was no basis for providing relief to Petitioner in that it fell within those grounds raised in the Petitioner's appeal of his second PCRA that was either previously litigated, and therefore could not be considered, or that it was not previously litigated and was therefore waived. (Doc. 46-8 at 10.) In carefully reviewing the record, this particular ground had been raised for the first time on appeal from the second PCRA to the Superior Court. As such, because this claim was known to LeBar before January 21, 2005, but not raised in his first PCRA petition, as amended, it was therefore waived and will not be addressed herein. Based upon the foregoing, the court finds that LeBar is not entitled to habeas relief.

## III.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason

33

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). In the instant matter, jurists of reason would not find the disposition of Petitioner's case debatable. As such, no COA will issue.

An appropriate order follows.